IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


**MARY ANN MARTINEZ,**

    **Plaintiff,**

**vs.**              **No. CIV 02-1168 LCS**

**JO ANNE B. BARNHART,**
**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Plaintiff's Motion to Reverse and Remand for Payment of Benefits, or in the Alternative, for a Rehearing filed February 14, 2003 *(Doc. 12)*. Defendant filed a Response on March 13, 2003 *(Doc. 14)* and Plaintiff filed her Reply on April 7, 2003 *(Doc. 15)*. The parties have each consented to having the United States Magistrate Judge conducting all further proceedings in this matter pursuant to 28 U.S.C. § 636(c). The United States Magistrate Judge, having considered the Motion, the Memorandum, the Response, the Reply, the administrative record, and the applicable law, and being otherwise fully advised, finds that Plaintiff's motion is not well-taken and should be **DENIED**.

### I.  BACKGROUND

Plaintiff applied for supplemental security income ("SSI") on August 5, 1997, alleging onset of disability on that date. R. 101-104. Plaintiff's application was denied on December 16,

1

1997, and Plaintiff submitted a Request for Reconsideration on February 21, 1998. R. 87. Plaintiff's request for reconsideration was denied on July 29, 1998. R. 89. Plaintiff thereafter requested a hearing before an Administrative Law Judge ("ALJ") on September 29, 1998. R. 92-94. A hearing took place before the ALJ on August 24, 1999. R. 22. Plaintiff testified on her own behalf. *Id*.

The ALJ issued his decision on September 15, 1999, finding that Plaintiff was not disabled within the meaning of the Social Security Act. R. 14-19. In his decision, the ALJ found that Plaintiff has not engaged in post-onset substantial gainful activity. R. 17. The ALJ found that Plaintiff has a "severe" impairment or combination of impairments including a history of rheumatic heart disease with residual mitral valve stenosis and regurgitation with angiographically normal coronary arteries. *Id.* The ALJ further found that Plaintiff's impairments did not meet or equal in severity any of the disorders described in the Listing of Impairments, 20 C.F.R. Part 4, subpt. P, app. 1. The ALJ found that Plaintiff's testimony was not entirely credible, and discounted her subjective complaints. R. 18. The ALJ found that Plaintiff retained the residual functional capacity ("RFC") for at least light work on a sustained basis., including her past work as retail clerk at a bakery. R. 18-19. The ALJ further relied upon the testimony of a vocational expert ("VE") who testfied as to the availability of such jobs in the local and national economies. R. 75-759.

Plaintiff appealed the decision by the ALJ by letter of September 15, 1999. R. 10. Plaintiff's representative requested a cassette tape of the hearing before the ALJ as well as 60 days to submit argument and any additional evidence  R. 12. Upon Plaintiff's request, the Appeals Council deferred action on Plaintiff's case for 40 days, to allow her to submit additional

evidence. R. 9. The Appeals Council again allowed Plaintiff an additional period of 40 days to supply additional evidence. R. 8. The Appeals Council considered additional evidence provided by the Plaintiff, but concluded that such evidence did not provided a basis for changing the ALJ's decision. R. 5-6. Plaintiff filed her Complaint in the United States District Court for the District of New Mexico on September 16, 2002, seeking review of the final decision of the Commissioner.

## II.   STANDARD OF REVIEW

This Court may only review the Commissioner's decision to determine whether it is supported by substantial evidence and whether correct legal standards were applied. *See Shepherd v. Apfel,* 184 F.3d 1196, 1199 (10th Cir. 1999); *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Soliz v. Chater*, 82 F.3d 373, 375 (10th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The Court may "neither reweigh the evidence nor substitute [its] judgment for that of the Commissioner." *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). A decision by an ALJ is not supported by substantial evidence if the evidence supporting the decision is overwhelmed by other evidence on the record. *See Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988).

In order to qualify for disability insurance benefits or supplemental security income, a plaintiff must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the plaintiff from engaging in substantial gainful activity. *Thompson*, 987 F. 2d at 1486 (10th Cir. 1993) (citing 42 U.S.C. § 423 (d)(1)(A)). At the first four levels of the sequential evaluation process, the plaintiff must show that she is not engaged in substantial gainful employment, she has an impairment or combination

of impairments severe enough to limit her ability to do basic work activities, and her impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1, or she is unable to perform work she had done in the past. 20 C.F.R. §§ 404.1520 and 416.920.  At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the plaintiff is able to perform other substantial gainful activity considering her residual functional capacity, age, education, and prior work experience.  *Id.*

### III.   ANALYSIS

Plaintiff alleges that the ALJ erred by (1) discounting Plaintiff's treating physicians' opinions, and (2) in finding that Plaintiff has the residual functional capacity to perform her past relevant work on a full-time basis, and further claims that the Appeals Council erred in failing to specifically discuss relevant new evidence.

**A.     Whether the ALJ erred in discounting the opinions of Plaintiff's treating physicians**

Plaintiff argues that the ALJ erred in discounting the opinions of her treating physicians that she is not able to work full time and can stand and walk for less than two hours per day.  R. 18.  As Plaintiff correctly notes, "[a]n ALJ is required to give controlling weight to a treating physician's opinion about the nature and severity of a claimant's impairments, including symptoms, diagnosis and prognosis, and any physical or mental restrictions, if 'it is well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record.'" *Bean v. Chater*, 77. F.3d 1210, 1214 (10th Cir. 1995).  Plaintiff's primary treating physicians, Veena Raisada, M.D., a cardiologist, and Toby Palley, M.D., a family health provider, both had long and continuous treating relationships with Ms. Martinez.

In discounting the opinions of Plaintiff's treating physicians, the ALJ noted that such

4

opinions were at odds with both the objective evidence and Plaintiff's actual activities. At the hearing, for example, Plaintiff testified that she generally works from 10:00 a.m. to 3:00 p.m. with a single fifteen-minute break. R. 32-33. Plaintiff testified that she prefers working as carhop, rather than as a cashier, and she prefers "moving around" and gets more tired working at the cash register. R. 67. Plaintiff testified that she does household chores such as vacuuming and sweeping every two days, and washes dishes daily, although she sometimes gets tired. R. 71-73. The consultative examiner ("CE"), Gwen Sun, M.D., indicated that Plaintiff reported functioning at normal activities level, with Plaintiff taking care of her child, housekeeping, shopping, cooking, and working. R. 329. Plaintiff thus reported varying activities including working, taking care of her child, taking care of herself, and taking care of her home.

In the instant matter, the opinions of Plaintiff's treating physicians indicating her inability to work conflict with these same physician's own reports and treatment notes. In her letter dated November 10, 2000, Dr. Raizada states that Plaintiff "should be considered for full cardiac disability because of her heart condition." R. 364. On a Cardiac Residual Functional Capacity ("CRFC") Questionnaire completed dated January 20, 1999, Dr. Raizada opined that Plaintiff's symptoms included shortness of breath, weakness and fatigue. R. 332. Dr. Raizada further noted that Plaintiff may have marked limitation of physical activity, with stress contributing to the severity of symptoms and functional limitations. *Id*. Dr. Raizada opined that Ms. Martinez could walk less than one block without rest or severe pain, and could sit and stand/walk less than two hours per day. R. 333. Nevertheless, Dr. Raizada stated that Plaintiff's prognosis was good. R. 332.

This opinion and CRFC questionnaire conflict with Dr. Raizada's previous treatment notes

and records. For example, Dr. Raizada noted on May 8, 1997 that although Ms. Martinez had an episode of shortness of breath some days earlier, Ms. Martinez had been working for the last seven months and although she was tired at the end of the day, "she has no cardiac symptoms on moderate physical activity at home." R. 242. A letter to Dr. Palley regarding a follow up appointment dated May 23, 1997 noted no change since the prior echocardiogram on May 7, 1996. R. 238. Dr. Raizada again noted that Plaintiff's echocardiogram was unchanged since May of 1996 in a August 29, 1997 letter to Dr. Palley. R. 221. A February 25, 1998 to Dr. Palley notes that "The patient works 46 hours over 2 weeks, walks quite a lot at work, but does not experience shortness of breath. She gives no history of shortness of breath at home on moderate physical activity, no episodes of palpitations except occasionally she feels missed beats." R. 200. Dr. Raizada noted in the same letter that Plaintiff has no congestive heart failure and is clinically stable. *Id.* In a January 14, 1999 letter to Dr. Palley, Dr. Raizada stated that Plaintiff "generally feels very weak and tired all the time but does not experience shortness of breath, PND, orthopnea, or edema. She occasionally feels short episodes of rapid heartbeat." R. 354. However, in Dr. Raizada's August 19, 1998 letter to Dr. Palley, she notes that Ms. Martinez "is now working 40 hours a week in a hamburger shop, but feels tired all the time, even in the morning. However, she gives no history of shortness of breath on moderate physical activities . . . . She does experience occasional short episodes of rapid heartbeat." R. 358-59. Dr. Raizada further noted "[n]o clinical evidence of cardiac decompensation." The final letter provided by Dr. Raizada on Plaintiff's behalf, opining that Plaintiff should be considered for full cardiac disability thus conflicts with Dr. Raizada's own records and numerous letters to Dr. Palley, which suggest that Plaintiff's condition has remained stable since May 1996, and which further suggest that

Plaintiff rarely experiences shortness of breath, does not have congestive heart failure, and tolerates moderate physical activity.  *See, e.g.,*  R. 200, 238, 242, 354, 358-59.

In his letter dated December 21, 201, Dr. Palley noted that Ms. Martinez "has had episodes of atrial fibrillation resulting in heart failure.  She has chronic symptoms of heart failure including shortness of breath on exertion and very low exercise tolerates. . . . Because of the above medical problems, Ms. Martinez is unable to work."  R. 366.  In a Medical Questionnaire dated June 15, 1999, Dr. Palley further opined that Plaintiff has an "extremely enlarged left atrium" and an "enlarged heart."  R. 337.  Dr. Palley stated that Ms. Martinez "will have steadily worsening heart function."  *Id*. The records of Plaintiff's treatment by Dr. Palley do not contain corroborative information and conflict with the records of Plaintiff's cardiologic treatment from Dr. Raizada.  *Compare* R. 332 with R. 337 (wherein Dr. Raizada noted that Plaintiff's prognosis was good).  *Compare also* R. 337 with R. 360 ("the left atrium is moderately to severely enlarged. . . . the right ventricle and right atrium are normal in size").  Dr. Palley's treatment notes from June 10, 1998 state that Plaintiff "gets exercise at work" and further noted that the results of Holter monitoring in July 1997 showed "rare ectopic ventricular complexes and was otherwise completely normal."  R. 197. On June 27, 1997, Dr. Palley noted Plaintiff's May 1997 visit to the Emergency Room for an episode of shortness of breath, but otherwise noted that Plaintiff was in no apparent distress. R. 235.  A December 22, 1997 progress note indicates that Plaintiff "[l]ooks well" and was in "no apparent distress."  R. 210.  Again, on August 24, 1998, Dr. Palley noted that Ms. Martinez looked well and was in no apparent distress. R. 357.  Dr. Palley further noted that a cardiovascular examination indicated a "regular rate and rhythm with her stable murmur."  *Id*.  Dr. Palley noted that Plaintiff had a cough for over two months, which

was likely related to her smoking, behavior which both Dr. Palley and Dr. Raizada counseled Plaintiff about. Although Dr. Palley stated that Ms. Martinez "will have steadily worsening heart function," testing indicated no significant changes in her cardiac condition since May 5, 1997. R. 360; *see also,* R. 221.

The letters from Dr. Raizada and Dr. Palley as well as the CRFC questionnaire and Medical Questionnaire both conflict with the treatment notes of these same physicians, as well as the objective results of medical tests and the Plaintiff's own testimony and assertions. "An ALJ is required to give controlling weight to a treating physician's opinion about the nature and severity of a claimant's impairments, including symptoms, diagnosis and prognosis, and any physical or mental restrictions, if 'it is well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record.'" *Bean*, 77 F.3d at 1214. The assertions made by Dr. Palley and Dr. Raizada that Plaintiff is unable to work are not well supported by clinical and laboratory diagnostic techniques, and are, in fact, inconsistent with other substantial evidence in the record. In discounting the opinions of Plaintiff's treating physicians, the ALJ properly gave specific reasons for doing so, and set forth the factual conflicts between such opinions and the objective evidence, as well as those same physicians' treating notes. R. 18-19. *Doyal v. Barnhart*, 331 F.3d 758, __, 2003 U.S. App. LEXIS 11541, *10 - *13 (June 10, 2003). The ALJ thus did not err in discounting the opinions of Plaintiff's treating physicians insofar as such opinions conflicted with these physician's notes and records, conflicted with the objective results of medical tests, and conflicted with Plaintiff's testimony and assertions.

**B.     Whether the ALJ erred in evaluating Plaintiff's residual functional capacity**

Plaintiff further claims that the ALJ erred in evaluating her residual functional capacity.

The ALJ concluded that Ms. Martinez retains the residual functional capacity for at least light work on a sustained basis.  As noted above, the ALJ properly discounted the opinion of the treating physician as to Plaintiff's RFC.  Plaintiff reported essentially normal daily activities to the consultative examiner.  R. 329-30.    Although Plaintiff claims that she does not remember if she has ever worked 40 hours per week, Dr. Raizada's August 19, 1998 letter to Dr. Palley, noted that Ms. Martinez "is now working 40 hours a week"  R. 328-329.  Plaintiff testified that she worked because she was required to work by welfare, and stated that if she worked more she would lose her welfare benefits.  R. 49.   Plaintiff testified that in her work she walks or runs to the cars.  R. 26  Plaintiff stated that as a carhop she moves her entire body around, she carries food out to the cars, she makes and stuffs bags with food items, carries out the trash, and cleans the floors.  R. 47, 61, 63.  Plaintiff said she gets tired, particularly when it is busy and she must move very fast, but is okay when it is not as busy and she can slow down.  R. 65-66.  Plaintiff nevertheless testified that she prefers being outside and working as a carhop, rather than working at the cash register.  R. 66-68.  In determining the RFC required for Plaintiff's job as a carhop, the ALJ relied upon the testimony of the vocational expert ("VE"), who testified at the hearing before the ALJ.  R. 75.  The VE noted that the carhop job is "unskilled light," and further noted that Plaintiff's previous job at a bakery was semi-skilled light.

      The ALJ found that Plaintiff retains the RFC for at least light work on a sustained basis.  R. 18.  The ALJ found that Plaintiff can stand and walk for 6 hours in an 8 hour days with normal breaks, that Plaintiff can lift 10 pounds frequently and 20 pounds occasionally. R. 18.  This finding is supported by substantial evidence in the record.  Plaintiff testified that she currently works up to five hours per days, standing and walking the entire time, with only one fifteen-minute break.  The

CE noted that Plaintiff "does not have any limitations except for, certainly, the most exerting categories of employment." R. 330.  Although Plaintiff claimed that she did not recall ever working a full forty-hour per week job, Plaintiff's medical records indicate that she may have worked forty-hours per week as a carhop in August 1998. R. 358-59.  Although Plaintiff claims that her condition has worsened, her cardiologist has indicated that her condition is stable and her prognosis is good.  Plaintiff's treating physicians have indicated that Plaintiff tolerates moderate exercise.  In evaluating Plaintiff's credibility, the ALJ noted that Plaintiff's testimony does not credibly establish symptoms or functional limitations to the extent alleged. R. 18.

"Credibility determinations are peculiarly the province of the finder of fact, [the Court] will not upset such determinations when supported by substantial evidence." *Diaz v. Secretary of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990). In determining the credibility of pain testimony, the ALJ can weigh and evaluate numerous factors including, "the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the plaintiff and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence." *Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988).  Moreover, "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings."*Id*. at 1133.

In making his credibility determination, the ALJ noted Plaintiff's many inconsistencies in relating her symptoms in testifying before the ALJ and in the medical record, Plaintiff's testimony that she worked no more than 18 to 20 hours per week because that was the minimum amount of

10

work required to keep her welfare benefits, and Plaintiff's decision to continue to smoke, despite being advised to stop smoking by both Dr. Raizada and Dr. Palley.  R. 18.   The ALJ properly discounted Plaintiff's report of her subjective complaints, after finding Plaintiff's testimony as to her symptoms and functional limitations were not credible, in accordance with 20 C.F.R. § 416.929.  Plaintiff herself testified that although carhopping was a more physically demanding job, she preferred it to cashiering, because working as a cashier made her more tired.  R. 67-68.  Plaintiff testified that her subjective complaints of shortness of breath and tiredness were exacerbated by having to work indoors, albeit, at a physically less-demanding job.  *Id*.   The ALJ's credibility finding was "closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings."*Huston*, 838 F.2d at 1133.

Having discounted Plaintiff's subjective complaints, and having discounted the opinions of the treating physicians insofar as such opinions conflicted with the medical record, and noting Plaintiff's credibility issues, it is apparent that the ALJ's determination of residual functional capacity is supported by substantial evidence.   The RFC adopted by the ALJ is that required by the job that Plaintiff currently performs on a part-time basis and may have performed full-time in the past.  Plaintiff's own testimony as to her activities as well as the opinion of the CE indicate that the ALJ's determination that Plaintiff retains the RFC to perform light work is supported by substantial evidence.

**C.    Whether the Appeals Council erred in failing to discuss relevant new evidence**

Plaintiff argues that the Appeals Council erred by failing to specifically discuss the new evidence she provided.  The record indicate that the Appeals Council "considered the additional evidence identified" but nevertheless concluded that "this evidence does not provide a basis for

11

changing the Administrative Law Judge's decision." R. 5-6.

This Court's statutory jurisdiction over this matter is confined to the final decision of the Commissioner, in this instance, the decision of the ALJ. *See* 42 U.S.C. § 405(g). The administrative decision of the Appeals Council is not subject to reexamination by the District Court. *See Browning v. Sullivan,* 958 F.2d 817, 822-823 (8th Cir. 1992). 20 CFR § 404.970 (b) provides that "[i]f new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record." It is apparent that neither the statute nor the applicable regulations require the Appeals Council to provide a detailed discussion of new evidence reviewed. Plaintiff relies upon *Stephens v. Callahan*, 971 F.Supp. 1388, 1393 (N.D. Okla. 1997), for such proposition. I do not find this case persuasive, in light of the language of the governing statute and relevant regulations. Instead, I find the reasoning of the Eighth Circuit in *Browning* far more persuasive. This Court lacks jurisdiction to consider the administrative decision of the Appeals Council, and may not address Plaintiff's claim of error. Even if the Court has jurisdiction to consider the administrative decision of the Appeals Council, I note that neither the statute nor the applicable regulations require the Appeals Council to specifically address each piece of new evidence it considers. *Browning v. Sullivan,* 958 F.2d at 822-823.

## IV. CONCLUSION

I find that Plaintiff's Motion to Reverse and Remand for Payment of Benefits, or in the Alternative, for a Rehearing filed February 14, 2003 *(Doc. 12)*. is not well-taken and should be **DENIED**, that the Commissioner's decision be **AFFIRMED**, and that this action be **DISMISSED**.

**IT IS, THEREFORE, ORDERED** that Plaintiff's Motion to Reverse and Remand for Payment of Benefits, or in the Alternative, for a Rehearing filed February 14, 2003 *(Doc. 12)* is **DENIED.**

**IT IS FURTHER ORDERED** that this matter be **DISMISSED WITH PREJUDICE.**

A Judgment in accordance with this Memorandum Opinion and Order shall be entered forthwith.

**IT IS SO ORDERED.**

_____
**LESLIE C. SMITH
UNITED STATES MAGISTRATE JUDGE**